UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| ABDUL WAHEED MOHAMMED,<br><br>Plaintiff,<br><br>vs.<br><br>WADE ANDERSON, Jail Captain, Pennington County Jail, official capacity; CASEY MUNSCH, Jail Captain, Pennington County Jail, official capacity; TAYLOR MUHLBEIER, Jail Lieutenant, Pennington County Jail, official capacity; ANDY DIRO, Religious Accommodation Officer, Pennington County Jail, official capacity; COREY BRUBAKKEN, Jail Commander, Pennington County Jail, official capacity; and KATHLEEN HOUSTON, Jail Lieutenant, Pennington County Jail, official capacity,<br><br>Defendants. | 5:26-CV-05006-RAL<br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING AND DIRECTING IMMEDIATE SERVICE |

Plaintiff Abdul Waheed Mohammed, an inmate at the Pennington County Jail, filed a pro se prisoner civil rights lawsuit. Doc. 1. Mohammed moves for leave to proceed in forma pauperis and filed a prisoner trust account report. Docs. 2, 3. Mohammed also filed a motion for a temporary restraining order, alleging that the defendants, all employees of the Pennington County Jail, are denying him religious accommodations during Ramadan. Doc. 13 at 1.

I.  **Motion for Leave to Proceed In Forma Pauperis**

Under the Prison Litigation Reform Act, a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The court may, however, accept partial payment of the initial filing fee where appropriate. Thus, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate

pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (per curiam) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Mohammed reports an average monthly balance for the past six months in his prisoner trust account of $0.04 and an average monthly deposit of $0.00. Doc. 3. Based on this information, the Court grants Mohammed's motion for leave to proceed in forma pauperis, Doc. 2, and waives his initial partial filing fee because the initial partial filing fee would be greater than his current balance. See 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Mohammed must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Mohammed's

2

institution. Mohammed remains responsible for the entire filing fee as long as he is a prisoner. See In re Tyler, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.     1915A Screening

### A.     Factual Background as Alleged by Mohammed

Mohammed alleges First, Fourth, Eighth, and Fourteenth Amendment violations based on his alleged denial of religious accommodations at the Pennington County Jail. See generally Doc. 1. Mohammed claims that "[e]very day Muslims Religious Accommodations like Holy Quran, prayer timings and Direction, Kufi also toilet cleaning supplies for only Muslim's [sic] were never provided nor it is [sic] available in Pennington County Jail." Doc. 1-1 at 4. Additionally, Mohammed alleges that the Pennington County Jail has "only one Religious Diet for all Religion's [sic] since September 2023[.]" Id. at 3. There is a "regular meal" and a meal for "Kosher/all other Religion's[.]" Id. Mohammed alleges that he was informed by jail staff that the "all Religious Diet does not violate[] any Religion Meal/Diet because it has only veggies[.]" Id. Mohammed alleges that this statement, however, was made to him "without even considering [his] Religious Diet request[.]" Id. Because a specifically "Muslim Accommodation is not available in State," Mohammed was informed that he could order what he needed for his religious diet from the commissary at his own expense. Id.

Mohammed also alleges that he "suffered exterm Crualty and Unusual punishment during Fasting Month's" because his fasting meals were "never on time." Id. at 4 (spelling and grammar errors in original). According to Mohammed, he "waited 2 hour's [sic] extra for meals to be provided, which violates Fasting rules." Id. Additionally, Mohammed alleges that the food provided to him during fasting lacked nutritious value, claiming "No good nutrition food was

provided for Fasting not a single fruit and No desert for Festivals[.]" Id. (spelling and grammar errors in original).

Mohammed provides a list of seventy-four religious program requests he made from October 2023 to December 2025, as well as eight grievances and appeals he filed. Id. at 6–8. These grievances and religious accommodation requests include Mohammed's request that he receive a Muslim Zabina Halal Meat Diet. See id. at 9; Doc. 11. Mohammed alleges that "For over 27 month's, all Defendant's disgrace my Religious Accommodation 48 times, Religious Programms 26 times[.]" Doc. 1 at 5 (spelling and grammar errors in original). He alleges that "Jail Official has there own Tactic's on how to Deny Inmate's complain's and Religious Accommodation request's[.]" Id. (spelling and grammar errors in original). Additionally, he states that Muslim inmates in the Pennington County Jail are being "punished by Jail official's crually and unusually under Constitution." Id. (spelling and grammar errors in original).

As injuries, Mohammed alleges that he has "lost over 30 pound's, Suffered malnutrition, physical and psychological affect's[,]" and that he is "suffering Trama and life time Injuries by Defendant's." Id. at 6, 8 (spelling and grammar errors in original). He claims that the defendants have "Directly Crush[ed]" his religious beliefs, and that he has suffered from "Mental health injuries[.]" Id. at 5. As relief, Mohammed requests $3 million, and that the Pennington County Jail provide him with a Muslim Halal Meat diet and "other and all resources and accommodations of Muslim religious rules." Id. at 8. He also requests that the Pennington County Jail "Treat Muslim's Fairly in Jail." Id. Mohammed sues the defendants, all employees of the Pennington County Jail, in their official capacities only. Id. at 2–3.

### B.  Legal Standard

A court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights and pro se complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985). Twombly requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" Twombly, 550 U.S. at 555 (citations omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This Court will now assess Mohammed's claims under 28 U.S.C. § 1915A.

C. **Legal Analysis**

1. **§ 1983 Claims Against Defendants in Official Capacities for Injunctive Relief and Money Damages**

Mohammed sues all defendants in their official capacities and seeks both injunctive relief and monetary damages. Doc. 1 at 2–3, 8. According to Mohammed's complaint, all defendants (Anderson, Munsch, Muhlbeier, Diro, Brubakken, and Houston) are employed at the Pennington County Jail. Id. at 2–3. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). Therefore, Mohammed's official capacity claims against Wade, Munsch, Muhlbeier, Diro, Brubakken, and Houston, are equivalent to claims against Pennington County.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A municipal government may be sued only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Id.; see also Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1997) (finding that "the [governmental] entity's official 'policy or custom' must have 'caused' the constitutional violation" in order for that entity to be liable under § 1983).

To establish governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[.]" Brewington v. Keener, 902 F.3d 796, 801 (8th Cir. 2018) (quoting Corwin v. City of Independence, 829 F.3d 695, 700 (8th Cir. 2016)).

A § 1983 complaint does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004) (citing Doe ex rel. Doe v. Sch. Dist., 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must still include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. Id.; see also Doe, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Here, Mohammed does not specifically plead the existence of an unconstitutional policy or custom. But his complaint includes allegations that jail officials have "there own Tactic's on how to Deny inmate's Complain's and Religious Accommodation request's." Doc. 1 at 5 (grammar and spelling errors in original). He also alleges that "Muslim Inmates in Pennington County Jail are been punished by jail official's crually and unusually under Constitution." Id. (grammar and spelling errors in original). Liberally construing his complaint, this Court finds that Mohammed has stated enough facts to support the existence of an unconstitutional policy or custom. Therefore, this Court must consider whether Mohammed's rights were violated by this allegedly unconstitutional policy or custom.

        **i.**    **First Amendment Claims**

           **a.**    **Free Exercise**

Mohammed alleges that his First Amendment rights have been violated by the Pennington County Jail's policy or custom of refusing religious accommodation requests and "punish[ing]" Muslim inmates. Doc. 1 at 5. Construing his complaint liberally, Mohammed brings a First Amendment free exercise claim against all defendants in their official capacities for both injunctive relief and monetary damages. See generally id.

7

To state a First Amendment free exercise claim, Mohammed must allege facts showing that prison officials have substantially burdened the free exercise of his religion. Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008). Substantially burdening the free exercise of religion means that the regulation

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 988 (8th Cir. 2004) (citation modified). Mohammed alleges that "For over 27 month's, all Defendant's disgrace my Religious Accommodation 48 times," and that as a result, his religious beliefs have been "Directly Crush[ed]." Doc. 1 at 5. He alleges that he had to wait an extra two hours for his meals in violation of his religion's fasting rules. Doc. 1-1 at 4. Additionally, he states that "[e]very day Muslims Religious Accommodations like Holy Quran prayer timings and Direction, Kufi also Toilet cleaning supplies for only Muslim's [sic] were never provided nor is it available in Pennington County Jail." Id. While Mohammed alleges that he has made a significant number of religious accommodation requests and grievances, see Doc. 1-1 at 5–8, he alleges that "Jail Official has there own Tactic's on how to Deny Inmate's complain's and Religious Accommodation request's[.]" Doc. 1 at 5 (spelling and grammar errors in original). At this stage of the proceeding, this Court finds that Mohammed has pled a plausible First Amendment free exercise claim. Therefore, Mohammed's First Amendment free exercise claims against Wade, Munsch, Muhlbeier, Diro, Brubakken, and Houston in their official capacities survive § 1915A screening.

### b. Retaliation

Mohammed alleges that "Muslim Inmates in Pennington County Jail are been [sic] punished by Jail official's [sic] crually [sic] and unusually under Constitution[,]" which this Court liberally construes as a First Amendment retaliation claim based on the Pennington County Jail's policy or custom of denying Muslim inmates' religious accommodations. Doc. 1 at 5.

To allege a First Amendment retaliation claim, a plaintiff must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Spencer v. Jackson Cnty., 738 F.3d 907, 911 (8th Cir. 2013) (quoting Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)). "[T]he plaintiff must show the official took the adverse action because the plaintiff engaged in the protected [activity]." Revels, 382 F.3d at 876. "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." Lewis v. Jacks, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994)).

Mohammed alleges facts sufficient to state a First Amendment retaliation claim. He alleges that he filed grievances, a protected activity under Jacks. Doc. 1 at 5, 6; Doc. 1-1 at 5–7; Jacks, 486 F.3d at 1029 (citing Dixon, 38 F.3d at 379). He also alleges that he has attempted to practice his religion in accordance with his First Amendment rights. See generally Doc. 1. While Mohammed does not specifically state that his inability to receive religious accommodations is in retaliation for exercising his First Amendment rights, Mohammed states that "Muslim Inmates in Pennington County Jail are [being] punished by Jail official's [sic] [.]" Doc. 1 at 5. Based on a liberal construction of his complaint, Mohammed states a plausible claim that the adverse action was taken at least in part because of protected First Amendment activities. Therefore,

9

Mohammed's First Amendment retaliation claim against Wade, Munsch, Muhlbeier, Diro, Brubakken, and Houston in their official capacities survives § 1915A screening.

### ii.     Fourth Amendment Claims

Mohammed alleges a violation of his Fourth Amendment rights, stating "Deprive of Right[.]" Doc. 1 at 5, 6; Doc. 1-1 at 1, 2. Liberally construing his complaint, Mohammed is alleging a Fourth Amendment excessive force violation based on the Pennington County Jail's policy or custom of denying religious accommodations for Muslim inmates. See Doc. 1 at 6 (checking the box for "Excessive force by an officer[.]"). While the Fourth, Eighth, and Fourteenth Amendments each protect against the use of excessive force, which constitutional standard to apply "depend[s] upon whether the victim is an arrestee, a pretrial detainee, or a convicted inmate of a penal institution." Andrews v. Neer, 253 F.3d 1052, 1060 (8th Cir. 2001). "Citizen claims that a police officer used excessive force in the course of making an arrest, investigatory stop, or other seizure of his person are properly analyzed under the Fourth Amendment's objective reasonableness standard[,]" Westwater v. Church, 60 F.4th 1124, 1128 (8th Cir. 2023) (citation modified), while the Eighth Amendment applies to prisoners, and the Fourteenth Amendment to pretrial detainees, Andrews, 253 F.3d at 1060–61. Here, Mohammed does not allege any facts regarding excessive force used during an arrest. See generally Doc. 1. Therefore, his Fourth Amendment excessive force claims against all defendants are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).

### iii.    Eighth Amendment Claims

Construing his complaint liberally, Mohammed brings a conditions of confinement claim in violation of his Eighth Amendment right to be free from cruel and unusual punishment based

on the Pennington County Jail's policy or custom of denying religious accommodations for Muslim inmates. See Doc. 1 at 6, 7; Doc. 1-1 at 1, 2.

"[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.'" Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). The Supreme Court of the United States has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citation modified). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]" Helling v. McKinney, 509 U.S. 25, 32 (1993) (citation omitted).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that (1) objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to inmate health or safety. Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (citing Farmer, 511 U.S. at 834). An Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances. Villanueva v. George, 659 F.2d 851, 854 (8th Cir. 1981) (en banc). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. See id.; see also Tyler v. Black, 865 F.2d 181, 183 (8th Cir. 1989) (en banc).

Here, Mohammed's Eighth Amendment conditions of confinement claim appears to be based on the fact that because the Pennington County Jail defendants have refused to make religious meal accommodations for him, he has been provided with inadequate nutrition. See generally Doc. 1. Inmates have a right to adequate nutrition, and the failure to provide adequate

11

nutrition may constitute deliberate indifference in violation of the Eighth Amendment. <u>Wishon v. Gammon</u>, 978 F.2d 446, 449 (8th Cir. 1992). An inmate alleging an inadequate diet under the Eighth Amendment must demonstrate that he lost significant weight or suffered adverse physical effects from lack of nutrition or was denied a nutritionally or calorically adequate diet. <u>Id.</u>; <u>see also</u> <u>Ingrassia v. Schafer</u>, 825 F.3d 891, 898–99 (8th Cir. 2016); <u>Davis v. Missouri</u>, 389 F. App'x. 579, 579–80 (8th Cir. 2010) (per curiam) (collecting cases).

    Here, Mohammed alleges that he has been denied a nutritional diet over a period of twenty-seven months and has "lost over 30 pound's, Suffered Malnutrition, physical and psychological affect's[.]" Doc. 1 at 6 (grammar errors in original). Mohammed alleges that while his Ramadan diet was "approved by Dietian, . . . the diet has only Cakes, White bread with Peanut-butter, Jelly. No fruit's (or) No Veggie's in diet at all[.]" Doc. 12 at 3 (spelling and grammar errors in original). It is a close call on whether Mohammed alleges facts sufficient to state a claim for conditions of confinement in violation of his Eighth Amendment right to be free from cruel and unusual punishment. The cumulative effect of these conditions, as alleged, seems sufficiently serious to meet the pleading standard for a constitutional deprivation. <u>See</u> <u>Day v. Norris</u>, 219 F. App'x 608, 610 (8th Cir. 2007) (per curiam) (finding that allegations of weight loss, fatigue, hunger pains, and mental anguish, as a result of inadequate diet, were sufficient to state an Eighth Amendment claim); <u>see also</u> <u>Rust v. Grammer</u>, 858 F.2d 411, 414 (8th Cir. 1988) (stating that a diet "without fruits and vegetables might violate the eighth amendment if it were the regular prison diet"). Thus, Mohammed's Eighth Amendment conditions of confinement claims against Wade, Munsch, Muhlbeier, Diro, Brubakken, and Houston in their official capacities survive § 1915A screening.

### iv.     Fourteenth Amendment Equal Protection Claims

Mohammed alleges that his Fourteenth Amendment equal protection rights were violated based on the Pennington County Jail's policy or custom of denying religious accommodations for Muslim inmates. See Doc. 1 at 5–6; Doc. 1-1 at 1–2.

The Equal Protection Clause of the Fourteenth Amendment requires the government to "treat similarly situated people alike," a protection that applies to prisoners. Murphy, 372 F.3d at 984 (quoting Rouse v. Benson, 193 F.3d 936, 942 (8th Cir. 1999)). The United States Court of Appeals for the Eighth Circuit has explained that for a prisoner to prevail on an equal protection claim, he "must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a fundamental right." Patel, 515 F.3d at 815 (citations and internal quotation omitted). "Religion is a suspect classification." Id. at 816 (citing Weems v. Little Rock Police Dep't, 453 F.3d 1010, 1016 (8th Cir. 2006)).

Here, Mohammed alleges that "Muslim Inmates in Pennington County Jail are been punished by Jail official's[.]" Doc. 1 at 5 (spelling and grammar errors in original). Mohammed alleges that he was told that a "Muslim Accommodation is not available in State" and that there are "Only Two Meal's option's in Jail[:] Regular meal and Kosher/all other Religion's[.]" Doc. 1-1 at 3 (spelling and grammar errors in original). In his request for relief, Mohammed requests that Muslim inmates be treated fairly in jail. Doc. 1 at 8. At this stage of pleading, the Court takes as true Mohammed's allegations that he has been treated differently than similarly situated inmates of different religions and that this different treatment has been caused by a policy or custom of the Pennington County Jail. Therefore, Mohammed's Fourteenth Amendment equal protection claims against Wade, Munsch, Muhlbeier, Diro, Brubakken, and Houston in their official capacities survive § 1915A screening.

## 2. Religious Land Use and Institutionalized Persons Act Claims

Though not explicitly mentioned in his complaint, this Court liberally construes Mohammed's claims that the defendants have denied him religious accommodations and infringed upon his religious liberty as asserting a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA).[1] See generally Doc. 1; Barnett v. Short, 129 F.4th 534, 539 (8th Cir. 2025) (noting that even though a plaintiff did not explicitly assert a claim under RLUIPA, it was appropriate for the district court to construe his complaint as asserting a RLUIPA claim based on the liberal construction courts give pro se complaints.).

RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). But "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation," and Mohammed must show that the Pennington County Jail's policy substantially burdens his exercise of religion. Holt v. Hobbs, 574 U.S. 352, 360–61 (2015) (citation modified). To establish a prima facie case under RLUIPA, a plaintiff must show "1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened." Smith v. Allen, 502 F.3d 1255, 1276 (11th Cir. 2007), abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277 (2011); see also 42 U.S.C. § 2000cc-1(a). If the plaintiff succeeds in making a prima facie showing, the defendant

---

[1] "Like RLUIPA, RFRA [the Religious Freedom Restoration Act] permits a plaintiff to sue to recover 'appropriate relief against a government' when it substantially burdens a person's exercise of religion without furthering a compelling governmental interest." Barnett v. Short, 129 F.4th 534, 540 (8th Cir. 2025). But unlike RLUIPA, the Supreme Court of the United States has held that RFRA is "unconstitutional as applied to state and local governments because it exceeded Congress' power under § 5 of the Fourteenth Amendment." Sossamon v. Texas, 563 U.S. 277, 281 (2011). Because Mohammed's claims are against Pennington County Jail employees, and therefore Pennington County itself, this Court does not construe Mohammed's complaint as alleging any claims under RFRA. See Ward v. U.S. Marshals, No. 5:23-CV-05061-CCT, 2025 WL 949242, at *33 (D.S.D. Mar. 28, 2025) (stating that a plaintiff "fail[ed] to allege a claim under RFRA against Pennington County, jail employees, and jail contractors.").

bears the burden to prove that the challenged regulation is the least restrictive means of furthering a compelling governmental interest. Allen, 502 F.3d at 1276 (citing 42 U.S.C. § 2000cc-2(b)).

As discussed above, Mohammed alleges that he has been denied religious accommodations and that his religious beliefs have been "crush[ed]" as a result of the defendants' actions. Doc. 1 at 5. Therefore, Mohammed has stated a plausible claim that his religious exercise has been substantially burdened, and his RLUIPA claims against Wade, Munsch, Muhlbeier, Diro, Brubakken, and Houston in their official capacities survive § 1915A screening.

### D.     Motion for Temporary Restraining Order

Mohammed filed a motion for a temporary restraining order (TRO). Doc. 13. Mohammed alleges that "Defendent's [sic] are being vindictive and intimidating by not providing Ramadan Accommodation, mostly the diet." Id. at 1. Mohammed alleges that he "made multiple request [sic] to make changes, specially [sic] on Religious diet and Calories intake." Id. According to Mohammed,

> [He] has been served 2 piece's of Cakes or Bread, 1 Bologne and 1 Vanilla Dairy Drink mix, for Ramadan fasting of 12 and 1/2 hour's and intensionally delaying dinner. After 6–8 hour's of fasting, [Mohammed] feel's dizzy and dark vision due to less Calories intake assigned by Defendent's since 02/18/2026.

Id. (spelling and grammar errors in original).

A TRO is issued only in the extremely rare instance in which court action must be taken without notice to the nonmoving party. Fed. R. Civ. P. 65(b). A TRO is justified only when a movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the

15

movant before the adverse party can be heard[.]" Fed. R. Civ. P. 65(b)(1)(A). Mohammed's pleadings do not meet this standard.[2]

"In the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995) (citation modified). "Traditionally, federal courts have adopted a broad hands-off attitude towards problems of prison administration." Hosna v. Groose, 80 F.3d 298, 304 (8th Cir. 1996) (citation omitted). It is not the role of federal courts to micro-manage state prisons. Klinger v. Dep't of Corr., 31 F.3d 727, 733 (8th Cir. 1994), cert. denied, 513 U.S. 1185 (1995).

By submitting a brief, one-page motion for a TRO, Mohammed has not met his burden of establishing the propriety of a TRO. See Doc. 13. Recognizing the time-sensitive nature of Mohammed's complaint, however, this Court orders the Pennington County Jail defendants to respond to Mohammed's motion for a temporary restraining order, Doc. 13, within 14 days of service. This Court may then consider if a preliminary injunction should issue under Fed. R. Civ. P. 65(a).[3]

---

[2] Mohammed filed a supplement Count III on March 12, 2026, Doc. 14, setting forth a First Amendment claim relating to access to court and disruption of legal mail. This Court considered this supplement in ruling on the TRO but not in screening of the claims.

[3] When determining whether to grant a motion for preliminary injunctive relief, the Eighth Circuit has instructed district courts to consider the following factors: (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the injury that granting the injunction will inflict on the other interested parties; (3) the probability the movant will succeed on the merits; and (4) whether the injunction is in the public interest. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). "A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted); see also Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (stating that a temporary restraining order "is an extraordinary remedy never awarded as of right." (citation omitted)).

### III. Conclusion

Accordingly, it is

ORDERED that Mohammed's motion for leave to proceed in forma pauperis, Doc. 2, is granted. It is further

ORDERED that the Clerk of Court shall send a copy of this order to the appropriate financial official at Mohammed's institution. It is further

ORDERED that the institution having custody of Mohammed is directed that whenever the amount in Mohammed's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Mohammed's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full. It is further

ORDERED that Mohammed's Fourth Amendment excessive force claims against all defendants are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1). It is further

ORDERED that Mohammed's First Amendment free exercise and retaliation claims against Wade, Munsch, Muhlbeier, Diro, Brubakken, and Houston in their official capacities survive § 1915A screening. It is further

ORDERED that Mohammed's Eighth Amendment conditions of confinement claim against Wade, Munsch, Muhlbeier, Diro, Brubakken, and Houston in their official capacities survives § 1915A screening. It is further

ORDERED that Mohammed's Fourteenth Amendment equal protection claims against Wade, Munsch, Muhlbeier, Diro, Brubakken, and Houston in their official capacities survive § 1915A screening. It is further

ORDERED that Mohammed's RLUIPA claims against Wade, Munsch, Muhlbeier, Diro, Brubakken, and Houston in their official capacities survive § 1915A screening. It is further

ORDERED that immediate service be effected. In order to accomplish immediate service, the Court directs the Clerk of Courts to issue summonses for Wade, Munsch, Muhlbeier, Diro, Brubakken, and Houston and provide them to the United States Marshal Service. It is further

ORDERED that the United States Marshal Service **immediately** serve the completed summonses, together with a copy of the complaint, Doc. 1, the motion for a temporary restraining order, Doc. 13, the supplement, Doc. 14, and this order, upon the defendants at the Pennington County Jail. It is further

ORDERED that a courtesy copy of the complaint, Doc. 1, the motion for a temporary restraining order, Doc. 13, and this order will be sent by e-mail to the Pennington County State's Attorney. It is finally

ORDERED that the defendants respond to Mohammed's motion for a temporary restraining order, Doc. 13, within 14 days of service. Additionally, the defendants shall serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3).

DATED March 13th, 2026.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE